**FILED**
**Sep 02, 2022**
**01:22 PM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| ANTRON EVANS,<br>        Employee,<br>v.<br><br>FAMILY DOLLAR STORES, INC.,<br>        Employer,<br>And,<br>SAFETY NATL. CAS. CORP.,<br>        Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No. 2022-08-0195<br><br>State File No. 800764-2022<br><br>Judge Allen Phillips |

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS, GRANTING ATTORNEYS FEES AND REFERRAL FOR POTENTIAL PENALTIES

Mr. Evans requested a panel of psychiatrists, attorney's fees incurred because of Family Dollar's failure to timely initiate medical benefits, and payment of a medical bill. Family Dollar contended he was not entitled to the panel because his authorized physician did not make a psychiatric referral, and it disputed that it owed the bill. As to attorney's fees, Family Dollar contended it did not wrongfully deny the claim.

After considering the issues at an Expedited Hearing on August 30, 2022, the Court denies Mr. Evans's requests for a panel of psychiatrists and payment of the bill. However, it grants his request for attorney's fees and also refers Family Dollar to the Compliance Program for consideration of penalties.

### History of Claim

On October 15, 2021, two armed assailants robbed the store where Mr. Evans worked, and one of them hit Mr. Evans's head with a gun. Mr. Evans said it bloodied his head and rendered him temporarily unconscious. The assailants then forced him to try to open the store's safe and cash register while threatening to shoot him.

Afterwards, Mr. Evans called the police and his store manager. An ambulance

1

came, and the first responders tended to his head wound. The next day, Mr. Evans went to an emergency room where the provider diagnosed headaches and recommended follow-up with a primary care physician. The provider noted "no psychiatric complaints" but gave Mr. Evans "patient education information" for victims of assault which included a statement that victims often suffer "strong emotions" and may find counseling helpful.

Later that month, Mr. Evans obtained counsel, who contacted Family Dollar's insurance carrier to obtain medical treatment for Mr. Evans. Counsel learned the carrier had not opened a claim, and over the next few months, she continued to request that Family Dollar do so. However, nothing happened until five months after the injury, when Family Dollar completed a First Report of Work Injury. A week after that, it provided a panel of neurologists.

Mr. Evans chose Dr. Mohammad Assaf, whom he saw only once, on May 17, 2022, although he awaits another appointment. On May 17, Dr. Assaf diagnosed headaches and post-concussion syndrome and said Mr. Evans could work without restriction. Dr. Assaf noted no psychiatric complaints, specifically finding no depression, anxiousness, decrease in concentration, or sleeplessness due to something other than his headaches. His record concluded with this language: "Patient Referred Out and Summary of Care Provided: No."

Mr. Evans continues to work at Family Dollar and is now an assistant manager. He testified that he wanted psychiatric evaluation because of flashbacks of the robbery and dreams of being at gunpoint. He is scared when he goes to the safe and when he closes the store at night, as that was when the robbery happened. He said he had never had psychiatric problems or treatment previously.

In support of his claim, Mr. Evans cited *Lewis v. Molly Maid*, 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *9 (April 20, 2016), for the proposition that to receive a panel, an employee does not have to establish compensability, but must only show the occurrence of an incident and resulting symptoms. Here, he claimed he notified Dollar General of a psychiatric problem in October, and Family Dollar should have provided a panel because he suffered an injury and expressed a need for medical treatment. He also said his "injury" fits the statutory definition of a mental injury and added that the literature given him at the emergency room regarding counseling was also sufficient "to trigger Employer's liability to provide a psychiatry panel."

Mr. Evans recognized the requirements of Tennessee Code Annotated section 50-6-204(h) (2021) which reads: "All psychological or psychiatric services . . . shall be rendered only by psychologists or psychiatrists and shall be limited to those ordered upon the referral of [a panel physician]." However, he said his interpretation of the statute required that he "unpack" it "by separating the compound sentence."

2

Specifically, he said the first clause "means just as it reads," an employee can receive psychologic or psychiatric treatment only from providers in those specialties. But Mr. Evans reads the second clause to mean that an employer is not "required to heed to the psychological or psychiatric recommendations of a medical provider that was not selected through [a] panel." In other words, the second clause means only that an employer is not required to follow an *unauthorized* psychiatrist's recommendations.

Mr. Evans anticipated Family Dollar would argue that the second clause requires an employer to provide psychiatric treatment *only* if a panel physician makes a referral for it. However, he contended that such reading means "no matter the psychological complaints expressed," an injured worker "would be up the creek without a paddle" unless a panel physician referred him to a psychiatrist. Mr. Evans did not believe the Legislature intended that result.

Mr. Evans also requested payment of the emergency room bill from October, claiming it was clearly related to treatment required by the incident.

As to attorney's fees, Mr. Evans pointed to his first contact with Family Dollar in October, his continued contact through January, and his filing of a Petition for Benefit Determination in February. Despite those efforts, Family Dollar did nothing until March, and Mr. Evans said that "sweeping delay" was "precisely the scenario" contemplated by Tennessee Code Annotated section 50-6-226(d)(1)(B) when it provides for attorney's fees for failure to timely initiate benefits.

For its part, Family Dollar argued just as Mr. Evans surmised: it contended the second clause of section 204(h) should be interpreted just as written, meaning an employer must provide psychiatric treatment *only* if a panel physician makes a referral. In support, Family Dollar relied on *Beech v. G4S Secure Solutions (USA), Inc.*, TN Wrk. Comp. App. Bd. LEXIS 71 (Dec. 16, 2020), where the employee also was struck in the head during an assault and the employer also provided a panel of neurologists. The selected neurologist noted the employee complained of anxiety, cognitive dysfunction, and sleeplessness and referred the employee to a neuropsychologist. The employer did not authorize the referral or provide a psychiatric panel, so the employee requested an expedited hearing.

At the hearing, the *employer* contended that the employee had not shown the psychological referral was medically necessary or related to the incident. The trial court rejected the employer's argument, holding that the employee did not have to show medical necessity but only that he would likely prevail as to whether a panel physician made a psychological referral. The Appeals Board affirmed, writing that:

> … Employer misconstrues the burden of proof and misstates the relevant issue. The issue is not whether Employee has come forward with sufficient evidence to

3

convince the trial court that the referral was medically necessary or that his alleged psychological injury is causally related to the work incident. That was not Employee's burden to prove at that stage of the case. *Instead, the relevant issue is whether Employee came forward with sufficient proof from which the trial court could conclude a panel-selected treating physician made a referral to a specialist.* *Id.* at *9. (Emphasis added).

Family Dollar also cited two Court of Workers' Compensation Claims opinions where the trial courts denied psychological treatment in the absence of a referral and one where treatment was ordered because of a specific referral. All three relied on the logic of *Beech*.[1]

In rebuttal, Mr. Evans argued that the Appeals Board focused on section 204(a)(3)(H) in *Beech*, rather than section 204(h). In short, he claimed the Board focused more on referrals from authorized physicians in general and was not addressing psychological referrals specifically.

Family Dollar also contested the medical bill, arguing that Mr. Evans did not list it as an issue in the Petition for Benefit Determination, that he did not state it as an issue at the beginning of the hearing, and that he presented no proof as to the medical necessity of the billed services. As to attorney's fees, Family Dollar said it did not wrongfully deny a panel of psychiatrists; thus, Mr. Evans could not recover attorney's fees for wrongful denial.

### Findings of Fact and Conclusions of Law

At this Expedited Hearing, Mr. Evans must show he would likely prevail at trial regarding his requests for a panel of psychiatrists and for payment of the medical bill. Tenn. Code Ann. § 50-6-239(d)(1).

Turning first to the panel request, the Court considers Mr. Evans's argument that that treatment is necessary because the incident both occurred and triggered symptoms. On that point, the Court finds Mr. Evans credible and that he sincerely feels the need for psychiatric treatment. However, the Court notes not only the absence of a referral but also the absence of any psychiatric complaints in the records.

The Court cannot determine what treatment is necessary. Neither can Mr. Evans nor his counsel. Parties and lawyers (and by logical extension the Court) are not qualified

---

[1] Though the Court holds its colleagues on the trial bench in the highest esteem, and would fain yield to their wisdom, lamentably it cannot. Instead, the Court is fettered with the obligation to deem controlling only the opinions of higher tribunals such as the Appeals Board. See *Palmer v. Hardy*, 2017 TN Wrk. Comp. App. Bd. LEXIS 17 at *9 (Feb. 23, 2017) (citing Tennessee authority to the effect that "[t]rial court decisions have no precedential value.") Thus, no matter how efficacious, the Court might only consider other trial court opinions persuasive. However, when so considered, the Court finds that the logic of the learned trial judges applies with equal vigor to these facts.

to determine causation or medical necessity. *Beech,* at *12.

But, as in *Beech,* medical necessity is not the relevant issue. Rather, the Court finds section 204(h) is controlling. If the words of a statute "clearly mean one thing, the courts cannot give them another meaning under the guise of construing them." *Hadzic v. Averitt Express,* 2015 TN Wrk. Comp. App. Bd. LEXIS 14, at *8 (May 18, 2015). Likewise, a court cannot allow "any forced or subtle construction that would extend or limit the statute's meaning." *Thompson v. Comcast,* 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *24 (Jan. 30, 2018). Here, the Court finds Mr. Evans attempts a forced construction of section 204(h) that departs from the clear wording of the statute.

Specifically, the Court finds the words of the second clause of section 204(h) do not mean that an employer must follow only the recommendations of an approved psychiatrist. Rather, the Court finds the entire statute has only one clear meaning: an employee can obtain psychological or psychiatric treatment only from a psychologist or psychiatrist *and* he can receive that treatment *only upon a panel physician's referral.*

The Court also disagrees with Mr. Evans that the Appeals Board did not focus on section 204(h) in *Beech.* To the contrary, the Board directly quoted the statute's language, emphasizing the words *"upon the referral of [a panel physician]."*

Thus, the Court finds that the only relevant issue here is the same as in *Beech.* Quite simply, the outcome turns on the answer to one question: Did Mr. Evans present evidence that an authorized physician referred him for psychiatric treatment? The answer to that question is *no,* Dr. Assaf has not made a referral at this time. It follows then that the Court cannot order Family Dollar to provide a panel of psychiatrists unless Dr. Assaf makes a referral for psychiatric treatment.

The Court must also deny the request for payment of the emergency room bill at this time. In *Eaves v. Ametek, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 53, at *8 (Sep. 14, 2018), the Appeals Board reversed an order for payment of medical bills when the bills were not signed by a physician, accompanied by a proper certification, and lacking proof of reasonableness, necessity, or causal relationship. The same is true here.

However, the Court *does* find Mr. Evans is entitled to attorney's fees under Tennessee Code Annotated section 50-6-226(d)(1)(B) for failure to timely initiate medical benefits because it did not provide the original panel until March 2022, five months after the incident.

In *Thompson,* the employer delayed providing a panel for five months after an authorized physician recommended a specialist. The Appeals Board said that delay "exemplifies one of the extremely limited set of circumstances where an award of reasonable attorneys' fees and costs is appropriate at an interlocutory stage of the case."

5

Family Dollar's five-month delay exemplifies those circumstances too, and the Court directs Mr. Evans's counsel to file a petition for fees as more specifically described below.

In addition, Tennessee Compilation Rules and Regulations 0800-02-01-.06 (May, 2018), requires that an employer provide a panel of physicians no later than three days after the employee expresses a need for medical care. Family Dollar did not provide the initial panel until March, and the five-month delay subjects it to a potential penalty under both section 50-6-118 (12) and Rule 0800-02-01-.10.

Finally, Family Dollar's delay was not limited to an untimely panel: it also failed to submit a First Report of Injury to the Bureau for the same five-month period. Tennessee Compilation Rules and Regulations 0800-02-14-.04(4) (July, 2021) requires that an "adjusting entity" submit a First Report of Work Injury to the Bureau "as soon as possible in all cases where the reported injury results in the need for medical treatment [or lost time]." Mr. Evans needed medical treatment in October. Under those circumstances, subsection 14-.04(4)(a) required Family Dollar to submit a first report on or before November 15, 2021. Because Family Dollar did not file the first report until March 2022, it is subject to a potential penalty under section 50-6-118(2).

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court denies Mr. Evans's request for a panel of psychiatrists and payment of the emergency room bill at this time.

2. The Court grants Mr. Evans's request for attorney's fees under Tennessee Code Annotated section 50-6-226(d)(1)(B) because of Family Dollar's failure to timely initiate medical benefits. Mr. Evans's counsel shall file a petition for fees and expenses incurred in obtaining the original panel, itemized by the task, date of performance, time spent, and the requested hourly rate within ten days of the date of this order. Family Dollar shall have five days in which to respond.

3. The Court refers Family Dollar to the Compliance Program for consideration of penalties under Tennessee Code Annotated sections 50-6-118(2) and (12) for late filing of a First Report of Injury and untimely provision of a panel of physicians.

3. The Court sets a Status Hearing for **Monday, January 9, 2023, at 10:00 a.m. Central Time**. The parties must call 731-422-5263 or toll-free 855-543-5038 to participate.

**ENTERED September 2, 2022.**

6

**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits
1. Collective medical records of Methodist Hospital and Dr. Assaf
2. First Report of Work Injury
3. Panel of neurologists
4. Correspondence from Mr. Evans's counsel to Family Dollar-October 29, 2021
5. Mail receipt for October 29 correspondence
6. E-mails from counsel to Bureau mediator
7. E-mail to insurance adjuster from employee's counsel

Technical Record
1. Petition for Benefit Determination
2. Dispute Certification Notice with attachments regarding additional issues
3. Request for Expedited Hearing
4. Employee's Expedited Hearing Brief
5. Employer's Brief
6. Employer's Witness and Exhibit List

## CERTIFICATE OF SERVICE

I certify that a copy of this Expedited Hearing Order was sent as indicated on September 2, 2022.

| Name | Email | Service sent to: |
|---|---|---|
| Monica R. Rejaei, Employee's Attorney | X | mrejaei@nstlaw.com lbaggett@nstlaw.com@nstlaw.com |
| Tiffany Sherill, Employer's Attorney | X | tbsherrill@mijs.com |
| Compliance Program | X | WCCompliance.Program@tn.gov |

Penny Shrum, Court Clerk
wc.courtclerk@tn.gov

7



<u>Expedited Hearing Order Right to Appeal</u>:

        If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*